IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND

| UNITED STATES | : | |
| --- | --- | --- |
| | : | |
| v. | : | Case No. 22-CR-239-ELH |
| | : | |
| MICHAEL BRANDON | : | |
| | : | |
| Defendant | : | |

## MOTION TO SUPPRESS TANGIBLE EVIDENCE

Mr. Michael Brandon, by and through his attorney, Cynthia A. Frezzo, Assistant Federal Public Defender, respectfully moves this Honorable Court pursuant to Rule 12(b)(3) of the Federal Rules of Criminal Procedure to suppress all evidence seized on May 15, 2022, as he was the subject of an illegal stop and search by Baltimore City Police, which violated the Fourth Amendment.

More specifically, the arresting officer in this case, Officer Stewart, did not have reasonable suspicion to believe that the car Mr. Brandon was driving had excessive windshield tint. Mr. Brandon was the driver and sole occupant of this car, which had out-of-state (Pennsylvania) tags. As such, Officer Stewart was prohibited from stopping this car because it was not subject to Maryland's tint regulations. Additionally, following that initial unlawful stop, Officer Stewart illegally searched the car in question by opening the driver's side door without legal justification. During this initial search, Officer Stewart retrieved the VIN from inside the driver's side door. Officer Stewart returned to his vehicle to run the driver (Mr. Brandon's) information. Upon returning to Mr. Brandon, Officer Stewart ordered Mr. Brandon to step out of the car. Officer Stewart immediately began frisking Mr. Brandon, without any reason to believe he was armed and dangerous. Officer Stewart felt a bulge at the front of Mr. Brandon's "dip" area, which was later

1

revealed to be the firearm at issue in this case. Officers later searched the car, from which CDS (cocaine), packaging, and other evidence was seized.

This search and seizure ran afoul of the Fourth Amendment. Maryland's window tint statute cannot justify Officer Stewart's initial seizure in this case. By its terms, Maryland's window tint statute does not apply to all cars, and most notably excludes from its ambit cars that are registered out of state. On May 15, 2022, Mr. Brandon's car carried tags from Pennsylvania, not Maryland. Nothing Officer Stewart observed before seizing Mr. Brandon indicated that the car was registered in the state of Maryland, and thus there was no reasonable suspicion for the stop.

The government will likely argue that a state case, *Baez v. State*, 192 A.3d 945 (Md. App. 2018) purports to authorize traffic stops for window tint violations for out-of-state cars, and that Officer Stewart therefore relied in good faith on binding appellate precedent. The Court should reject this argument. Even if the Court decides that the intermediate appellate court's decision in *Baez* is on point, it is directly contradicted by *United States v. Frank Johnson*, 256 F.3d 214 (4th Cir. 2001), binding appellate precedent from the Fourth Circuit that demands the opposite result. This conflict in authorities renders the law unsettled at best and makes the good faith exception unavailable. The Court must therefore suppress the evidence seized in this case.

## **PROCEDURAL HISTORY**

Mr. Brandon was initially charged in a two-count indictment, filed on July 6, 2022, alleging one count of possessing a firearm after having been convicted of a crime punishable by a term exceeding one year, in violation of 18 U.S.C. § 922(g) (Count One); and one count of knowingly possessing a machine gun, in violation of 18 U.S.C. § 922(o) (Count Two). ECF No. 1. On February 1, 2023, a superseding indictment was filed, including the additional charges of

possession with intent to distribute a mixture or substance containing a detectable amount of cocaine base, in violation of 21 U.S.C. § 841(a)(1) (Count Three); and possessing a firearm in furtherance of drug trafficking, in violation of 18 U.S.C. § 924(c) (Count Four). ECF No. 21. All events are alleged to have occurred on May 15, 2022.

Mr. Brandon made his initial appearance in federal court on August 8, 2022, pursuant to a writ and consented to detention because he was in primary state custody. This matter is currently scheduled for a motions hearing on June 1, 2023, at 10:00 a.m. ECF No. 27.

## **FACTUAL BACKGROUND**

The charges in this case stem from a daytime traffic stop of a car that was operating lawfully on Baltimore City's roadways on May 15, 2022. That stop was based entirely on Officer Stewart's purported observation of "full front windshield tint." USA-000032. The car in question was a blue 2005 Acura TL, bearing a Pennsylvania license plate. After Officer Stewart pulled the Acura over, he opened the driver's side door and proceeded to take a photograph of the vehicle identification number ("VIN") on the interior of the driver's side door, near the door latch. This was not visible from the exterior of the car, and would not have been visible to Officer Stewart but for his opening the driver's side door. Officer Stewart did not ask permission to open the door, and did so without probable cause. Of note, during this search, Officer Stewart inquired of Mr. Brandon as to whether he was armed and whether there were any weapons in the car. Mr. Brandon responded in the negative, and Officer Stewart proceeded to photograph the VIN on the inside of the car.

Following this interaction, Officer Stewart shut the driver's side door and returned to his police vehicle. Officer Stewart later returned to Mr. Brandon's car, opened the driver's side door again, and ordered Mr. Brandon to exit the vehicle. Officer Stewart placed his hands on Mr.

3

Brandon, directing his movement as Mr. Brandon stood up and exited the car. Officer Stewart immediately began patting down Mr. Brandon, eventually discovering a bulge in his front waistband area. The bulge was a firearm that was ultimately seized by law enforcement following a struggle between Officer Stewart and Mr. Brandon. Following the recovery of this firearm, Mr. Brandon was handcuffed and placed under arrest. The Acura was searched and certain items of evidence and contraband were seized, including CDS, packaging, and other material forming the basis of the charges now pending against Mr. Brandon.

## **ARGUMENT**

I. **Mr. Brandon Was Subject to an Unconstitutional Traffic Stop Without Reasonable Suspicion or Probable Cause.**

The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. CONST. AMEND. IV. It is well settled that a traffic stop is a Fourth Amendment seizure that must meet constitutional muster. *Delaware v. Prouse*, 440 U.S. 648, 654, 653 (1979) (holding that "spot checks" of cars to check vehicle registration or licensing compliance were unreasonable). Such a seizure is valid only "if it is justified by probable cause or reasonable suspicion." *United States v. Johnson*, 734 F.3d 270, 275 (4th Cir. 2013). In practice, this "standard is met . . . when officers observe a traffic violation." *Id.*[1]

When an officer is *unaware* of a traffic violation, pulling the driver over is unreasonable. Thus, the Fourth Circuit has made clear that an officer may not jump to the conclusion that a facially compliant car is actually in violation of the traffic code unless the officer is aware of facts

---

[1] Courts in the Fourth Circuit have used the probable cause and reasonable suspicion standards somewhat interchangeably when examining traffic stops. *See, e.g.*, *United States v. Bowman*, 884 F.3d 200, 209 (4th Cir. 2018); *United States v. Sowards*, 690 F.3d 583, 588 (4th Cir. 2012) (quoting *Whren v. United States*, 517 U.S. 806, 810 (1996)). In the traffic context, there is little practical difference between the two standards. The officer must see a traffic violation to justify the stop.

to substantiate this theory. *See, e.g.*, *United States v. Feliciana*, 974 F.3d 519, 523 (4th Cir. 2020) (traffic stop on unsupported theory that trucker did not have permit to operate commercial vehicle on federal parkway was unreasonable); *United States v. Frank Johnson*, 256 F.3d 214, 217 (2001) (stop of darkly tinted car unreasonable when statute did not apply to out-of-state cars); *United States v. Wilson*, 205 F.3d 720, 724 (4th Cir. 2000) (en banc) (traffic stop invalid when officer could not read expiration date on temporary tag).

In this case, Mr. Brandon was seized when Officer Stewart signaled with his overhead lights and effectuated a traffic stop of Mr. Brandon's vehicle. Yet, the facts known to Officer Stewart at that point did not supply him with either reasonable suspicion or probable cause to conduct this seizure, since there was no basis to conclude that Mr. Brandon had committed a traffic offense or any other crime. Although it may try, the government cannot justify Mr. Brandon's seizure in this case and therefore the officer's actions violated the Fourth Amendment.

**A. Officer Stewart Unlawfully Seized Mr. Brandon to Investigate a Window Tinting Violation.**

The government is likely to argue that Officer Stewart properly stopped Mr. Brandon on suspicion of violating Maryland's window tint statute. The government's problem, however, is that Maryland law simply does not regulate the tint of cars that are registered out of state. Because Officer Stewart had no basis to believe that Mr. Brandon's car was registered in the state of Maryland at the time of the stop, the government's argument must fail.

Maryland Transportation Code § 22-406(i) is the only law that addresses window tinting in the state of Maryland. This provision advises that "a person may not operate a vehicle registered under § 13-912, § 13-913, § 13-917 or § 13-937 of this article on a highway in this State" unless the vehicle's tint complies with certain minimum light transmission requirements. Md. Code Ann.,

Transp. § 22-406(i)(1). If the vehicle is registered under § 13-912,[2] all the windows in the car must have tinting lighter than 35%. *See* Md. Code Ann., § 22-406(i)(1)(i). If the car is registered under §§ 13-913, 13-917, or 13-937,[3] only the windows "to the immediate right or left of the driver" need to comply with the 35% benchmark. *Id.*, § 22-406(i)(1)(i). Therefore, this law prescribes permissible window tint based on how the car in question is registered with the state of Maryland.

However, § 22-406(i) does not apply to cars that are registered out of state. Each of the registration laws cross-referenced in § 22-406(i) refer to classes of vehicles which are "registered with the Administration." *See* §§ 13-913(a), 13-916(a), 13-917, 13-937(a). The "Administration," as the term is used in the Maryland Transportation Article, refers to the Maryland Motor Vehicle Administration or "MVA." *See* Md. Code Ann., Transp. § 11-102 ("'Administration' means Motor Vehicle Administration"). The import of this clear language is that cars not "registered with the Administration" need not comply with Maryland's window tint law.

This exception for out-of-state cars makes good sense. If the window tint laws applied to cars registered in other states, drivers would have to consult the traffic code and change their vehicle equipment every time they cross state lines. Thus, the law allows for reasonable variation in many equipment provisions for out-of-state cars. *See, e.g.*, Md. Code Ann., Transp. § 22-222(b) (requirement for "multi-beam road-lighting equipment" only applies to vehicles registered in Maryland); *id.*, § 22-221(g) (only vehicles registered in Maryland must have front and rear "warning lamps" which can flash simultaneously as a traffic hazard warning); *id.*, § 22-403(b)

---

[2] *I.e.*, registered as a car or station wagon with the MVA. Md. Code Ann., Transp. § 13-912(a)

[3] *I.e.*, as a vehicle for hire, *see* § 13-913(a), a truck, *see* § 13-917(a), or a "multipurpose passenger vehicle," *see* § 13-937(a) with the MVA.

6

(only vehicles registered in Maryland must have driver's side rear view mirrors); *id.*, § 22-405.2(b)(3) (permitting vehicle registered out of state to use certain specialty tires). Simply put, a car registered out of state does not violate § 22-406(i) when this provision quite deliberately only regulates Maryland cars.

Once the Court recognizes the proper scope of § 22-406(i), Mr. Brandon's case becomes very straightforward. When Officer Stewart conducted the traffic stop in this case, he had no knowledge that Mr. Brandon's car was registered in Maryland, rather than Pennsylvania, on May 15, 2022. Maryland law therefore had nothing to say about Mr. Brandon's window tinting. When Officer Stewart stopped Mr. Brandon, he had not confirmed whether his car was registered in the state. Because Officer Stewart did not know the car's registration, his car was outwardly compliant with the traffic code and therefore there was no valid reason for the stop. In other words, the facts known to the officer established neither probable cause nor reasonable suspicion to justify the seizure and the traffic stop therefore violated the Fourth Amendment.

This conclusion is not only supported by common sense and a plain reading of § 22-406(i), but also by binding precedent from a published Fourth Circuit decision. In *United States v. Frank Johnson*, the Fourth Circuit considered a challenge to a traffic stop based on South Carolina's "window tinting law." 256 F.3d 214 (4th Cir. 2001). The defendant was driving on a South Carolina highway in a Georgia-registered car when a state trooper pulled him over because his back window was so dark the trooper "couldn't see anything in the car." *Id.* at 215. After a canine alerted at the side of the vehicle, the trooper searched the car and discovered two kilograms of cocaine. *Id.* at 215–16.

In a brief and decisive opinion, the Fourth Circuit held that the traffic stop was unreasonable. Much like Maryland's, South Carolina's window tint law provides that "[n]o person

7

may operate a motor vehicle that is required to be registered in [South Carolina] on any public highway" unless its windows have greater than 27% light transmission. *Id.* at 216 & n.1. Given that the car was displaying valid Georgia plates, the court recognized that the defendant was simply not violating the South Carolina tint law and could not be lawfully stopped on this basis. *Id.* at 217. Further, because the trooper was not aware of other evidence suggesting that the driver was skirting South Carolina's registration law (for example, by living in the state but neglecting to register the car there) the court rejected the argument that the trooper could effectuate the stop to investigate whether the tint law applied because the car was "required to be registered" in the state. *Id.* at 216–17. In short, the trooper violated the Fourth Amendment's requirement that he conduct a traffic stop based only on suspicion of genuinely "unlawful conduct." *Id.* at 217 (quoting *Wilson*, 205 F.3d 720 at 722–23) (emphasis omitted).

Keeping with *Frank Johnson*'s reasoning, several courts have reached similar decisions in analogous cases outside the Fourth Circuit. *United States v. Granado,* 302 F.3d 421, 423 (5th Cir. 2002) (no probable cause for car stop because Texas's requirement that cars possess a front license plate applied only to cars registered within the state); *United States v. Lyons*, 687 F.3d 754, 762 (6th Cir. 2012) (noting the government's concession that a car stop could not be predicated on a window obstruction statute which did not apply to cars registered out of state); *United States v. Leal*, No. 3:03-CR-31-J-32HTS, 2003 WL 21665126, at *10–11 (M.D. Fla. Mar. 28, 2003) (Florida window tint provision applied only to Florida-registered cars); *State v. Eldridge*, 249 N.C. App. 493, 499–500 (2016) (invalidating traffic stop of out-of-state vehicle that lacked a driver's side mirror when this provision only applied to cars registered in North Carolina); *State v. Morgan*, 154 Idaho 109, 112 (2013) (requirement for front and rear license plate applied only to cars

8

registered in Idaho). Under *Frank Johnson* and these persuasive precedents, Mr. Brandon's stop violated the Fourth Amendment.

### B. Officer Stewart Conducted an Unlawful Search When He Opened the Car Door to Retrieve the VIN.

To the extent that the government may elicit or ask this Court to rely on observations made or derived from the moment that Officer Stewart first opened Mr. Brandon's car door without his consent, such evidence (and any derivative evidence) is the result of an illegal search. A warrantless search is presumptively unreasonable, subject only to a few limited, narrowly defined exceptions. *Katz v. United States*, 389 U.S. 347 (1967). While the Supreme Court has distinguished the interior of one's vehicle as a space not subject to the same expectations of privacy as the home, the car's interior "as a whole is nonetheless subject to Fourth Amendment protection from unreasonable intrusions by the police." *New York v. Class*, 475 U.S. 106, 108 (1986). The *Class* Court noted that "our holding today does not authorize police officers to enter a vehicle to obtain a dashboard-mounted VIN when the VIN is visible from outside the automobile. *If the VIN is in the plain view of someone outside the vehicle, there is no justification for governmental intrusion into the passenger compartment to see it*." *Id.* at 119 (emphasis in original).

The subject vehicle in this case is a 2005 four-door Acura TL. All cars manufactured after 1969 are required by federal law to have a VIN that is visible from the exterior of the car. 49 CFR § 571.115 (S4.6) (1984), cited in *New York v. Class*, at 112 (the VINs "…shall be readable, without moving any part of the vehicle, through the vehicle glazing under daylight lighting conditions by an observer having 20/20 vision (Snellen) whose eye point is located *outside the vehicle* adjacent to the left windshield pillar") (emphasis in original). As further confirmation, the Owner's Manual for the 2005 Acura TL confirms that the VIN is located both on the internal driver's side doorjamb, and is on a plate fastened to the top of the dashboard. *Exhibit A*. The manual notes that "[y]ou

9

can see it [the VIN] by looking through the windshield on the driver's side." *Id.* Courts have followed the logic of *Class* to suppress searches based on unreasonable VIN inspections. *See*, *e.g.*, *United States v. Caro*, 260 F.3d 1209 (10th Cir. 2001) (holding that inspection of vehicle identification number in doorjamb of defendant's vehicle during routine traffic stop was not objectively reasonable search); *United States v. Johnson*, 2006 WL 435975 (W.D.N.C. 2006) (finding that officer's search of a car's doorjamb for the VIN constituted a violation of the Fourth Amendment, but that the defendant's consent to search remedied this violation).

Additionally, *Class* predates the Supreme Court's line of trespassory invasions constituting a "search" under the Fourth Amendment; namely, *Florida v. Jardines* and *United States v. Jones*. The Supreme Court has stated "[w]hen the Government obtains information by physically intruding on persons, houses, papers, or effects, a search within the original meaning of the Fourth Amendment has undoubtedly occurred." *Florida v. Jardines*, 133 S.Ct. at 1414 (*citing United States v. Jones*, 132 S.Ct. 945, 950–51, 950 n. 3, (2012)) (internal quotation marks omitted). Mr. Brandon therefore further asserts that the opening of his driver's side door by Officer Stewart constituted an unlawful trespass, and therefore an illegal search under the Fourth Amendment. Considered either in this light or in line with other precedent, Officer Stewart's act of opening the car door was objectively unreasonable and not permitted under the Fourth Amendment. The fruits of this illegal search and any evidence derived therefrom must therefore be suppressed.

### C. *Baez v. State* Was Wrongly Decided and is Not Binding on This Court.

Mr. Brandon anticipates the government will cite *Baez v. State*, a Maryland Court of Special Appeals case that addressed a traffic stop under § 22-406(i). 192 A.3d 945 (Md. App. 2018). It is true that *Baez* upheld a traffic stop of a non-Maryland vehicle under § 22-406(i).

However, for several reasons, *Baez* is a thin reed to stand on and does not counsel against suppression in Mr. Brandon's case.

The parties in *Baez* entered into a factual stipulation and litigated the constitutionality of a traffic stop. *Id.* at 946–47. The stipulation provided that the defendant, who was driving a Virginia-registered Dodge Charger, was stopped "for a tint violation." *Id.* at 946. After the stop, the officer searched the Charger and discovered marijuana. *Id.* at 592. The parties agreed that if § 22-406(i) regulated the Virginia car, its windows would have been too dark under Maryland law. *Id.* at 946–47. Conversely, if the car was beyond § 22-406(i)'s scope by virtue of its Virginia registration, the defendant maintained that the stop violated the Fourth Amendment. *Id.*

The Court of Special Appeals acknowledged that the law did not apply to cars registered out-of-state. *Id.* at 950 ("The Legislature . . . limit[ed] the application of the law to vehicles registered only in Maryland."). Yet, the court still held that the traffic stop was constitutional because the officer was entitled to conduct an investigatory stop to "investigate further and to ascertain where the vehicle was registered." *Id*. Towards the end of the opinion, the court added that "[a] police officer, suspecting a tint window violation, may lawfully stop a vehicle to investigate further and ask to see the vehicle registration to determine origin of registration. That the vehicle may be registered in a foreign jurisdiction does not vitiate the lawfulness of the stop." *Id.* at 951.[4]

For several reasons, the Court should reject *Baez* as wrongly decided. Most obviously, reading *Baez* to control this case would run afoul of the Fourth Circuit's clear holding in *Frank Johnson*. *Frank Johnson* held that a directly analogous South Carolina tint law did not justify a traffic stop of the defendant's Georgia-registered car, just as Mr. Brandon contends here.

---

[4] It does not appear that the defendant in *Baez* sought *certiorari* in the Maryland Court of Appeals.

11

Moreover, the Fourth Circuit in *Frank Johnson* considered and rejected the government's argument (as raised in *Baez*) that the traffic stop was constitutionally permitted to allow the officer to investigate the particulars of the Georgia car's registration. To embrace *Baez* would therefore necessarily contradict binding precedent from the Fourth Circuit in *Frank Johnson* in favor of a non-binding decision from Maryland's intermediate state appellate court.

But more fundamentally, the Court would be equally justified in rejecting *Baez* because its reasoning is suspect and violates key tenets of search and seizure law. Foundational Fourth Amendment precedents require officers to have more than an "inchoate and unparticularized suspicion or hunch" to reach the standards of probable cause and reasonable suspicion. *United States v. Sokolow*, 490 U.S. 1, 7 (1989) (internal quotation marks omitted). As already stated, when police see a car that is outwardly compliant with the traffic code, it is not reasonable for an officer to nonetheless pull the car over to look deeper into the driver's license or registration status. *See, e.g.*, *Feliciana*, 974 F.3d at 523; *Wilson*, 205 F.3d at 724. This is the equivalent of a suspicion-free "spot check" for license and registration compliance—a practice the Supreme Court held to be unconstitutional decades ago. *Prouse*, 440 U.S. at 663. Yet, there was no affirmative suggestion to the officer in *Baez* that the defendant's car had out-of-state registration and was thus violating the tint law. This result contravenes the Fourth Amendment and contradicts the clear lessons of *Frank Johnson* and other Fourth Circuit precedents. This Court should follow binding precedent, reject *Baez*, and suppress the fruits of the traffic stop.

**II.  Officer Stewart Did Not Have a Sufficient Basis to Conduct the Pat-Down of Mr. Brandon.**

Officer Stewart's suspicion-less, baseless decision to frisk Mr. Brandon resulted in the retrieval of contraband that must be suppressed as the fruit of an unlawful search in violation of the Fourth Amendment. The standard for conducting a frisk requires both (1) a lawful

investigatory stop and (2) a reasonable suspicion that the person stopped is armed and dangerous. *United States v. Robinson*, 846 F.3d 694 (4th Cir. 2017) citing *Arizona v. Johnson*, 555 U.S. 323, 326-27 (2009); *United States v. Powell*, 666 F.3d 180 (4th Cir. 2011), citing *Terry v. Ohio*, 391 U.S. 1 (1968). The Fourth Circuit has repeatedly cautioned against the "inclination of the Government toward using whatever facts are present, no matter how innocent, as indicia of suspicious activity" so as to justify a frisk. *United States v. Foster*, 654 F.3d 243, 248 (4th Cir. 2011).

In this case, Officer Stewart claims in his report that he only began patting down Mr. Brandon once Mr. Brandon turned his body away from him and "held his right arm stiff down in front of him." USA-000032. However, Officer Stewart's bodyworn camera reveals a much different chain of events, which decidedly reveals no evidence that Mr. Brandon was armed and dangerous. First, as discussed *infra*, the traffic stop at issue in this case was the product of a window tint violation; the car was not being driven in a dangerous or hazardous manner, nor did the officer observe anything prior to the stop that would give rise to suspicion that Mr. Brandon was armed. Second, Officer Stewart had an initial encounter at the driver's side door with Mr. Brandon. During that initial encounter, Mr. Brandon did not say or do anything to generate any suspicion. Additionally, he was asked by Officer Stewart if he was armed or if there was anything in the car that could hurt Officer Stewart. Mr. Brandon replied no and, at that point, Officer Stewart did not observe any weapons or any other dangerous activity. Finally, upon returning to Mr. Brandon's vehicle, Officer Stewart asked Mr. Brandon to step out of the car. In doing so, he touched Mr. Brandon and, contrary to his report, immediately began frisking him. Furthermore, Mr. Brandon did not hold his arm "stiff" and "down" in front of him. The bodyworn camera reveals that Mr. Brandon had his arms bent upward and away from his body

the entire time he was being patted down. It was not until Officer Stewart felt the bulge at the front of his waistband that Mr. Brandon reached down with one of his hands, to resist Officer Stewart's search and seizure. Officer Stewart lacked any suspicion whatsoever that Mr. Brandon was armed *and* dangerous. *See United States v. Robinson*, 846 F.3d 694 (4th Cir. 2017); *Terry v. Ohio*, 391 U.S. 1 (1968). In addition to the grounds raised *infra* at Part I, the Court must also suppress the evidence in this case as it was the fruit of an illegal search.

### III. The Officers Searched Mr. Brandon's Car in Violation of the Fourth Amendment.

Mr. Brandon also contends that the officers' warrantless search of his car violated the Fourth Amendment. With limited exceptions, an officer must have probable cause to believe that a vehicle contains evidence of criminal activity before conducting a search. *United States v. Patiuka*, 804 F.3d 684, 690 (4th Cir. 2015). An officer may base this probable cause on evidence in plain view, but only "if they have not violated the Fourth Amendment in arriving at the spot" where they observed the evidence in question. *Kentucky v. King*, 563 U.S. 452, 463 (2011). "The government bears the burden of proof in justifying a warrantless search or seizure." *United States v. Davis*, 997 F.3d 191, 195 (4th Cir. May 7, 2021) (quoting *United States v. McGee*, 736 F.3d 263, 269 (4th Cir. 2013)).

Following his arrest, Baltimore City police officers manipulated, entered, and looked through Mr. Brandon's car without a warrant, probable cause, nor any other recognized exception to the warrant requirement. As a result, this search violated the Fourth Amendment and its fruits must be suppressed.

Because the resolution of this issue (as well as the issues raised *infra*) will depend heavily on facts put forward by the government and adduced at a suppression hearing, Mr. Brandon reserves further argument.

## **CONCLUSION**

In conclusion, and for the reasons stated above, Mr. Michael Brandon was subjected to an unlawful traffic stop, search of his person, and vehicle search, all in violation of the Fourth Amendment. The Court should suppress the fruits of this unconstitutional search and seizure.

                                            Respectfully submitted,

                                            JAMES WYDA
                                            Federal Public Defender

                                            _____/s/_____
                                            CYNTHIA A. FREZZO #817358
                                            Assistant Federal Public Defender
                                            Office of the Federal Public Defender
                                            100 South Charles Street
                                            Tower II, 9th Floor
                                            Baltimore, Maryland 21201
                                            Phone: (410) 962-3962
                                            Fax: (410) 962-3976
                                            Email: cynthia_frezzo@fd.org